IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

TIMOTHY LEE BLUDWORTH,

    Petitioner,               No. CIV S-08-0451 LKK EFB P

    vs.

M.S. EVANS,

    Respondent.             ORDER AND
                                       FINDINGS AND RECOMMENDATIONS
_____/

        Petitioner is a state prisoner proceeding without counsel on a petition for a writ of habeas corpus under 28 U.S.C. § 2254. Respondent moves to dismiss this action on the ground that it is untimely. For the reasons explained below, the court finds that the petition is untimely, and therefore recommends that the motion be granted.

**I.    Procedural History**

        On May 11, 1999, the San Joaquin County Superior Court sentenced petitioner to an indeterminate state prison term of life without the possibility of parole for his conviction of first degree murder, in addition to a concurrent three-year term for robbery and a consecutive one-year sentencing enhancement. Resp.'s Mot. to Dism. ("Mot."), Docs. Lodged in Supp. Thereof ("Lodg. Doc.") 1, 2. On October 31, 2001, the California Court of Appeal, Third Appellate District affirmed the judgment and on January 23, 2002, the California Supreme Court denied

1

petitioner's petition for review. Lodg. Docs. 2, 4. Petitioner then filed nine *pro se* state post-conviction challenges:

(1) On September 24, 2002, petitioner filed a petition in the San Joaquin County Superior Court, which was denied on November 25, 2002.[1] Pet'r's Opp'n to Mot. ("Opp'n"), Docs. Lodged in Supp. Thereof ("Opp'n Doc.") 7, 8.

(2) On December 30, 2002, petitioner filed a petition for a writ of habeas corpus in the California Court of Appeal, Third Appellate District, which was denied on January 23, 2003. Lodg. Doc. 5.

(3) On July 23, 2003, petitioner filed a petition for writ of habeas corpus in the California Supreme Court, which was withdrawn per petitioner's request on January 28, 2004. Lodg. Doc. 6.

(4) On June 5, 2004, petitioner filed a petition in the San Joaquin County Superior Court, which was denied on July 6, 2004.[2] Lodg. Docs. 7, 8.

(5) On October 5, 2005, petitioner filed a petition in the California Court of Appeal, Third Appellate District, which was denied on October 20, 2005. Opp'n Docs. 26, 27.

(6) On March 21, 2006, petitioner filed a petition in the California Supreme Court, which was withdrawn per petitioner's request on April 26, 2006. Lodg. Doc. 9.

(7) On November 16, 2006, petitioner filed a petition in the California Court of Appeal, Third Appellate District, which was denied on November 30, 2006. Lodg. Doc. 10.

---

[1] Unless otherwise noted, the record does not contain evidence establishing when petitioner submitted his papers for mailing. Thus, there is no evidence to support application of the mailbox rule and the court must use as the filing date of each petition the date on which the petition was received by the court.

[2] Here, the record contains evidence to establish the date of mailing for purposes of applying the mailbox rule. The record also supports application of the rule to the December 18, 2006 petition and the June 16, 2008 petition filed in this court. *See Houston v. Lack*, 487 U.S. 266, 276 (1988) (prisoner's notice of appeal deemed timely filed on the date it was delivered to prison staff for delivery to the court); *Smith v. Duncan*, 297 F.3d 809, 814 (9th Cir. 2002) (applying mailbox rule to petitions filed in state court).

(8) On December 18, 2006, petitioner filed a petition in the San Joaquin County Superior Court, which was denied on February 14, 2007. Lodg. Docs. 11, 12.

(9) On April 12, 2007, petitioner filed a petition in the California Supreme Court, which was denied on October 10, 2007. Lodg. Docs. 13, 14.

On June 16, 2008, petitioner filed the instant petition challenging his 1999 conviction. Dckt. No. 6.

## II. Statute of Limitations

A one-year limitations period for seeking federal habeas relief begins to run from the latest of the date the judgment became final on direct review, the date on which a state-created impediment to filing is removed, the date the United States Supreme Court makes a new rule retroactively applicable to cases on collateral review or the date on which the factual predicate of a claim could have been discovered through the exercise of due diligence. 28 U.S.C. § 2244(d)(1).

There is no statutory tolling of the limitations period "from the time a final decision is issued on direct state appeal [to] the time the first state collateral challenge is filed . . . ." *Nino v. Galaza*, 183 F.3d 1003, 1006 (9th Cir. 1999). However, once a petitioner properly files a state post-conviction application the period is tolled, and remains tolled for the entire time that application is "pending." 28 U.S.C. § 2244(d)(2). "[A]n application is '*properly* filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). In California, a properly filed post-conviction application is "pending" during the intervals between a lower court decision and filing a new petition in a higher court. *Carey v. Saffold*, 536 U.S. 214, 223 (2002). The new petition filed in the higher court is considered timely if it is filed within a "reasonable time." *Evans v. Chavis*, 546 U.S. 189, 192-93 (2006). The United States Supreme Court has held that, in the absence of on-point California authority, an unexplained delay of six months or more is unreasonable. *Id.* at 201.

////

The limitations period may be equitably tolled where a habeas petitioner establishes two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way. *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005). In light of this pronouncement, the Ninth Circuit has reiterated that the threshold necessary to trigger equitable tolling is very high, and clarified that equitable tolling only applies where a petitioner shows that despite diligently pursuing his rights, some external force *caused* the untimeliness. *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1011 (9th Cir. 2009).

Petitioner has the burden of showing facts entitling him to statutory and equitable tolling. *Smith v. Duncan*, 297 F.3d 809, 814 (9th Cir. 2002); *Miranda v. Castro*, 292 F.3d 1063, 1065 (9th Cir. 2002).

**III. Analysis**

In this case, the statute of limitations began to run when petitioner's conviction became final on direct review. *See* 28 U.S.C. § 2244(d)(1)(A). The California Supreme Court denied review on January 23, 2002. Lodg. Doc. 4. The conviction became "final" within the meaning of section 2244(d)(1)(A) when the time for filing a petition for writ of certiorari expired ninety days later, on April 23, 2002. Supreme Ct. R. 13; *Bowen v. Roe*, 188 F.3d 1157, 1158-59 (9th Cir. 1999). The one-year limitations period commenced running the following day. *Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001). Thus, petitioner had until April 23, 2003, to file his federal habeas petition. However, he did not file the instant petition until June 16, 2008. Dckt. No. 6. Absent tolling, his application in this court is over five years late.

**A. Statutory Tolling**

The parties agree that the limitations period ran for a total of 154 days, from April 24, 2002 until September 24, 2002, when petitioner filed his first state petition. Opp'n at 8; Resp.'s Reply to Opp'n ("Reply") at 3. The parties also agree that petitioner is entitled to tolling from September 24, 2002 until January 23, 2003, when the state appellate court denied petitioner's second state petition. Opp'n at 9; Reply at 3.

The parties disagree over whether the limitations period was tolled during the interval between January 23, 2003 and July 23, 2003, when petitioner filed a petition in the state supreme court. *See* Opp'n at 9; Reply at 3-5. As noted, the United States Supreme Court has held that "only a timely appeal" tolls the one-year statute of limitations, and "in California, 'unreasonable' delays are not timely." *Chavis*, 546 U.S. at 197. In California, an unjustified delay of six months, or 180 days, is presumptively unreasonable.[3] *Id.* at 201. Here, petitioner waited 181 days before filing his third petition. Absent explanation, this delay cannot be statutorily tolled.

While petitioner recounts his efforts to obtain his "complete case file," those efforts do not explain this six month delay. *See* Opp'n at 2-3. Before the limitations period commenced, petitioner sought his "complete case file" from his appellate counsel and from the Central California Appellate Program. Opp'n at 2; Opp'n Doc. 4. On March 28, 2002, several weeks before the limitations period began, petitioner received what his appellate counsel believed to be petitioner's complete case file, including copies of relevant transcripts and his probation report. Opp'n at 2; Opp'n Doc. 5. Apparently, petitioner perceived the records sent by appellate counsel as incomplete, as he subsequently attempted "to recover records from his trial that had not been

---

[3] In the context of a challenge to a denial of parole, one California appellate court has found, since *Chavis*, that as a matter of state law a pro se prisoner's unjustified 10-month delay in filing a habeas petition in the appellate court after the superior court's denial of a similar petition is not unreasonable. *In re Burdan*, (*"Burdan"*)169 Cal.App.4th 18, 31, 86 Cal.Rptr.3d 549 (Cal.App.2008). The court in *Burdan* noted that the "reasonableness" standard is rooted in California's capital habeas jurisprudence. *Id.* at 18, 86 Cal.Rptr.3d 549. In that context, prompt pursuit of habeas relief is designed to "'vindicate society's interest in the finality of its criminal judgments, as well as the public's interest in the orderly and reasonably prompt implementation of its laws.'" *Id.* (quoting *In re Sanders*, 21 Cal.4th 697, 87 Cal.Rptr.2d 899, 903, (Cal.1999)). Other interests served by requiring prisoners to file habeas petitions within relatively short periods of time, which nowhere are specified, are to ensure that evidence is not lost by the passage of time and to allow victims and their families and friends to achieve psychological closure before too long after a conviction is obtained. *Id.* The court in *Burdan*, found that these considerations do not apply where a prisoner challenges a parole suitability determination. *Id.* However, for policy reasons the court in *Burdan* limited its holding to parole challenges. The instant case involves a prisoner challenging a judgment of conviction. Therefore, *Burdan* does not assist petitioner here. Furthermore, even if the 181 days were tolled in spite of the unexplained delay, the petition would have been due in February 2005 and was not filed until June 16, 2008. It is therefore late under either analysis.

provided by [his appellate counsel]."[4] Opp'n at 3. However, petitioner does not specify which trial records had not been provided by his appellate counsel. Nor does he explain if and/or why he needed them to prepare a habeas petition. On September 22, 2002, two days before petitioner filed his first state petition, he requested from his trial counsel "any and all information . . . regarding [his] case," including a "copy of [his] probation report . . . ." Opp'n at 3; Opp'n Doc. 6. Apparently petitioner did not receive a response to this letter, and waited nearly a year before following up, when on September 12, 2003, he sent his trial counsel a nearly identical letter. Opp'n at 3; Opp'n Doc. 13.

While petitioner has shown that he made several requests for information regarding his case, the timing of those requests does not account for the gap from January 23, 2003 to July 23, 2003. Furthermore, any lack of records does not explain the gap as petitioner does not argue that he needed any particular record to prepare his third state petition. This six month delay is therefore unjustified and cannot be tolled. Thus, 335 days (154 days plus 181 days) of the one-year limitations period had expired as of July 23, 2003.

The court will assume, without deciding, that the limitations period was tolled from July 23, 2003 until July 6, 2004, the date that petitioner's fourth state petition was denied.[5] Lodg.

---

[4] In his March 28, 2002 letter to petitioner, appellate counsel stated, "If an item is missing from the list, [petitioner] can write me and I will contact the AG for the missing volume, or he can write himself to the AG. As far as I know, the 'complete transcripts' have been sent and nothing is missing . . . ." Opp'n Doc. 5. Nothing in the record suggests that petitioner ever attempted to contact his appellate counsel about any missing records. It appears that petitioner eventually contacted the Office of the Attorney General, but not until March 7, 2005. Opp'n at 4; Opp'n Doc. 21.

[5] Petitioner states that he received "new material" from his appellate counsel in January of 2004. Opp'n at 3. The new material consisted of "police and investigative reports, statements of witnesses, and transcripts of several pre-trial hearings." Opp'n Doc. 14. Receipt of these materials prompted petitioner to file a motion to withdraw his habeas petition pending before the California Supreme Court so that he could "prepare and submit a new petition which presents all cognizable issues . . . ." *Id.* On January 28, 2004, the California Supreme Court ordered that petitioner's petition be withdrawn pursuant to petitioner's request. Opp'n Doc 15; Lodg. Doc. 6. Petitioner asserts that the "withdrawal of the third petition did not constitute the conclusion of [his] first round of state petitions," and that he is entitled to further statutory tolling on that basis. Opp'n at 11. Respondent disagrees, arguing that the withdrawal of the petition ended

6

Doc. 8. After the fourth petition was denied, petitioner waited 456 days before filing his fifth state petition. Unless petitioner can explain this delay, the limitations period ran 30 days later on August 5, 2004, as 335 days of the limitations period had already run.

The record indicates that petitioner continued to request records during this period. *See* Opp'n at 3-4. On August 30, 2004, petitioner sent a third letter to his trial counsel, again requesting "information . . . regarding [his] case," including a "copy of [his] probation report . . . ." Opp'n Doc. 18. Thereafter, on January 5, 2007, petitioner wrote to the Central California Appellate Program requesting his complete case file. Opp'n Doc. 19. These two letters do not explain the six month period following the denial of the fourth state petition.[6] The court acknowledges that petitioner specifically requested a copy of his probation report in his letters to his trial counsel. However, petitioner never claims to have needed this document to prepare a habeas petition, nor does he claim to have been missing any other record that he needed in order to prepare a petition. Moreover, petitioner had previously filed four state petitions, none of which were denied for a lack of records. Petitioner does not submit any other information that would explain this delay. As an unjustified six month period, petitioner is not entitled to statutory tolling for this period. *See Chavis* 546 at 201. Unless there is a basis for equitable tolling, the limitations period ran on August 5, 2004, and the instant petition is nearly four years late[7].

---

petitioner's first round of collateral review, and that pursuant to *Nino v. Galaza*, petitioner is not entitled to further statutory tolling. Reply at 5-6; *see also Nino*, 183 F.3d at 1006 ("the statute of limitations is tolled from the time the first state habeas petition is filed until the California Supreme Court rejects the petitioner's final collateral challenge"). Because the court finds that the petition is late even with tolling during the pendency of the fourth petition, it need not resolve this dispute. The court notes, however, that at least one district court has treated state court petitions filed after the withdrawal of a California Supreme Court petition as a second round of review. *See Rogers v. Giubino*, No. 06-cv-1277, 2007 U.S. Dist. LEXIS 72777, at *3-4, 8-9 (S.D. Cal. Sept. 28, 2007).

[6] Given this unexplained six-month period, there is no need to examine the adequacy of petitioner's explanations as to the rest of the 456 day period. *See Chavis*, 546 U.S. at 201.

[7] The instant petition was not filed until June 16, 2008.

**B. Equitable Tolling**

Equitable tolling is applicable only if extraordinary circumstances beyond a prisoner's control make it "impossible to file a petition on time." *Ramirez v. Yates*, 571 F.3d 993, 997 (9th Cir. 2009) (internal quotations omitted). Specifically, the prisoner must show that the extraordinary circumstances were the cause of his untimeliness. *Id.* (quoting *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003)).

Petitioner claims that his appellate counsel was required to prepare an application for a writ of habeas corpus, and that his failure to do so forced petitioner to prepare his own petitions. Pet'r's Surreply at 4. However, petitioner is not entitled to legal assistance in collateral proceedings. *See Pennsylvania v. Finley*, 481 U.S. 551, 557-58 (1987) (no constitutional right to appointed counsel in state habeas proceedings); *see also Lawrence v. Florida*, 549 U.S. 327, 336-37 (2007) (counsel's mistake in calculating limitations period does not warrant equitable tolling, "particularly in the postconviction context where prisoners have no constitutional right to counsel"). Moreover, petitioner's *pro se* status does constitute an extraordinary circumstance warranting equitable tolling. *See Raspberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir.2006) (holding that a *pro se* petitioner's "lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling"). Therefore, the mere fact that petitioner proceeded *pro se* in his postconviction proceedings does not warrant equitable tolling.

Next, petitioner claims he is entitled to equitable tolling because of the United States Supreme Court's decision in *Cunningham v. California*, 549 U.S. 270 (2007), which held that except for a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. Pet'r's Surreply at 5. Since petitioner does not raise a claim for relief based on *Cunningham*, the ruling could not have caused petitioner's untimeliness.[8] *See* Am. Pet.

---

[8] Nor would *Cunningham* entitled petitioner to a later start date of the statute of limitations. Section 2244(d)(1)(C) provides that the one-year period shall not run until "the date

8

Petitioner's remaining arguments for equitable tolling concern events occurring after the denial of his fifth state petition. Opp'n at 14-17 (arguing he is entitled to equitable tolling because of interference by prison officials, lost legal materials, and his attempts to exhaust administrative remedies). The state appellate court denied petitioner's fifth state petition on October 20, 2005, over a year after the statute of limitations period expired. Opp'n Doc. 27. The events alleged to have occurred after the expiration of the limitations period could not have caused petitioner's untimeliness, and therefore, cannot equitably toll the limitations period.

Petitioner also asserts that this court granted his "motion for equitable tolling" on May 28, 2008. Opp'n at 17. Petitioner is mistaken. On May 28, 2008, the court acknowledged that petitioner had filed a motion for equitable tolling, and found that it was "unclear from petitioner's motion whether he seeks to commence a habeas action or a civil rights action alleging a First Amendment violation of his right of access to the courts." Dckt. No. 4. The court directed petitioner to file either a civil rights complaint or an application for a writ of habeas corpus. *Id.* Contrary to petitioner's belief, the effect of the court's order was not to grant petitioner's motion for equitable tolling

Although not presented as a ground for equitable tolling, petitioner indicates that he was placed in administrative segregation with "severely limited access to his legal files" from August 18, 2003 until January 23, 2004. Opp'n at 3; Opp'n Doc. 12. Assuming the conditions described by petitioner were sufficient to justify equitable tolling, it would not bear on the timeliness of the federal petition, as petitioner has already received the benefit of statutory tolling during this period. *See Saunders v. Torres*, No. 1:07-CV-0557, 2009 U.S. Dist. LEXIS 33503, at *14 (E.D. Cal. Apr. 6, 2009) (issue of equitable tolling moot with respect to period of

---

on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." Petitioner does not raise a claim based on *Cunningham*, and even if he did, the constitutional right recognized in *Cunningham* was not "newly recognized" by the Supreme Court. *See Butler v. Curry*, 528 F.3d 624, 639 (9th Cir. 2008).

9

time that was already statutorily tolled). Thus, there is no basis to equitably toll the limitations period during this time. Nor can petitioner's attempts to obtain his "complete case file" serve as a basis for equitable tolling. Petitioner's attempts in this regard do not suggest that he was diligently pursing his rights. The record shows that during the relevant time period, petitioner made three requests for information regarding his case, each made almost a year apart. Opp'n Doc. 6 (September 22, 2002 letter); 13 (September 13, 2003 letter); 18 (August 30, 2004 letter). Petitioner offers no explanation for allowing so much time to pass between each request. Additionally, petitioner never indicates what records were missing from his case file or why he needed a particular record to prepare his federal petition. For these reasons, the court finds that petitioner has not demonstrated that his difficulty in obtaining "his complete case file," made it impossible for him to file a timely federal petition. *See Allen v. Lewis*, 255 F.3d 798, 800 (9th Cir. 2001) (holding that the prisoner must show "that the 'extraordinary circumstances' were the but-for and proximate cause of his untimeliness"). Because petitioner has not presented any extraordinary circumstances that stood in the way of timely filing a petition, equitable tolling is not warranted. *See Espinoza-Matthews v. California*, 432 F.3d 1021, 1026 n.5 (9th Cir. 2005).

**C. Actual Innocence**

Finally, petitioner attempts to circumvent the statute of limitations bar by claiming he meets the standard for the "actual innocence" gateway articulated by *Schlup v. Delo*, 513 U.S. 298 (1995). Opp'n at 18-19. As a threshold matter, neither the Supreme Court nor the Ninth Circuit has decided whether a showing of actual innocence excuses noncompliance with the federal limitations period. *See Majoy v. Roe*, 296 F.3d 770, 775-76 (9th Cir. 2002). Assuming such an exception exists, petitioner has not met the requisite standard.

Under the actual innocence standard, a petitioner must establish that the alleged constitutional error "has probably resulted in the conviction of one who is actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). Petitioner must demonstrate not just that a reasonable doubt exists in light of the

new evidence, but rather, that in light of the new evidence, no reasonable juror would have found him guilty. *Schlup*, 513 U.S. at 329; *see House v. Bell*, 547 U.S. 518, 537 (2006) (a credible *Schlup* gateway showing "requires new reliable evidence . . . that was not presented at trial.").

Here, petitioner has not offered any new evidence to demonstrate his actual innocence. Petitioner merely argues that "the prosecution failed to reveal . . . the existence of the actual statement from petitioner's co-defendant . . . saying that he robbed and murdered the victim." Am. Pet. at 8; Opp'n at 18. Without any evidence to support his claim, petitioner falls far short of the showing required by *Schlup*. *See Doe v. Menefee*, 391 F.3d, 147, 161 (9th Cir. 2004) (habeas court must determine trustworthiness of new evidence to determine whether petitioners can take advantage of *Schlup* gateway).

Nevertheless, the court has reviewed the record in this case, and notes that petitioner previously presented this actual innocence argument in the December 18, 2006 petition that he filed in the state superior court. In that petition, petitioner indicated that a February 25, 1998 investigation resulted in his co-defendant stating, "Okay. I did it for real, right, then when I do go to that jail, when am I supposed to be getting out?" Lodg. Doc. 11 at 3-4. Petitioner attached to that petition a purported excerpt of a transcript memorializing this statement. *Id.*, Ex. C at 106. Assuming this is the evidence petitioner now relies on, it does not establish his factual innocence. Contrary to petitioner's argument, his co-defendant did not admit to robbery and murder. Rather, the "I did it" statement appears to have been part of a conversation regarding whether the co-defendant, an alleged snitch, wanted to be housed in another jail for his own safety. *See id.* Moreover, even if the excerpt did contain a confession by petitioner's co-defendant, petitioner still would not have satisfied the *Schlup* standard, as the unsworn statement of petitioner's co-defendant would not be considered reliable for purposes of passing through the *Schlup* gateway. For these reasons, petitioner has not met his burden of showing his trial probably resulted in the conviction of one who is actually innocent.

////

## IV. Conclusion

For the foregoing reasons, respondent's motion to dismiss must be granted and this action dismissed as time-barred.

Accordingly, it is hereby ORDERED that petitioner's October 7, 2009 motion for an extension of time to file a surreply is granted and petitioner's October 9, 2009 surreply is deemed timely filed.

Further, it is hereby RECOMMENDED that respondent's April 10, 2009 motion to dismiss the petition as barred by the statute of limitations be granted and the Clerk be directed to close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991). In his objections petitioner may address whether a certificate of appealability should issue in the event he files an appeal of the judgment in this case. *See* Rule 11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant).

Dated: February 11, 2010.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE